IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| TRAVIS CROWTHER,<br><br>Plaintiff,<br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and DOES 1-50;<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT WRIGHT MEDICAL TECHNOLOGY, INC'S [23] PARTIAL MOTION TO DISMISS**<br><br>Case No. 1:18-CV-00120-DN<br><br>District Judge David Nuffer |

Defendant Wright Medical Technology, Inc. ("Wright Medical") moves, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff Travis Crowther's ("Crowther") claim[1] for products liability—manufacturing defect,[2] for his failure to state a claim. Because Crowther has pled facts sufficient to sustain his claim for a manufacturing defect, the Partial Motion to Dismiss[3] (the "Motion to Dismiss") is DENIED.

## BACKGROUND

Crowther's complaint arises out of his July 2007 hip replacement surgery, in which Wright Medical prosthetic components were used.[4] Crowther was later diagnosed with

---

[1] Amended Complaint ("Complaint") at 5–7, ¶¶ 25–37, docket no. 12, filed October 25, 2018.

[2] A products liability manufacturing defect and manufacturing flaw cause of action are one and the same and just reflect a variation with no legal effect.

[3] Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"), docket no. 23, filed November 8, 2018.

[4] Complaint at 3, ¶ 10; Complaint, Exhibit A ("Exhibit A"), docket no. 12-1, filed October 25, 2018.

metallosis,[5] and in May 2018, Crowther had revision surgery and the Wright Medical femoral ball head and neck components were removed.[6]

When a doctor performs a total hip replacement surgery, the natural hip joint, consisting of the ball-headed top of the femur bone which rests inside the acetabulum, or hip socket, is replaced with prosthetic components.[7] In a healthy hip, cartilage that eases movement protects the socket and femur ball head by providing cushioning between the two.[8] When the cartilage wears out, the acetabulum and ball head begin to wear down from bone-on-bone contact.[9] Total hip replacement surgery removes the damaged cartilage and bone parts, including the femoral ball head and acetabulum cavity, and replaces them with prosthetics.[10] Common prosthetic components in a total hip replacement surgery include a femoral stem, femoral neck, ball head, and acetabular component.[11] The artificial femoral stem is implanted into the femur bone as an anchor on which to attach a prosthetic femoral neck.[12] Then the artificial ball head is attached to the femoral neck.[13] The acetabular component is implanted inside



1

---

[5] Complaint at 3, ¶ 11.

[6] Complaint at 3, ¶ 11-12; Complaint, Exhibit B ("Exhibit B") at 2–3, docket no. 12-2, filed October 25, 2018.

[7] Andrew Still, *Total Hip Replacement,* University of Southern California, 1 Health & Medicine 5 (Nov. 2, 2002), https://illumin.usc.edu/total-hip-replacement/.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

the hip socket, and then the femur ball head is placed inside the newly implanted acetabular component.[14]

Some artificial hip joints contain lining between the acetabular component and the femur ball head, acting in place of cartilage to provide cushioning for the artificial joint.[15] However, Crowther alleges that the Wright System at issue in this case contained no artificial lining.[16] Instead, he alleges that the metal femur ball head was placed directly into the metal acetabular cup.[17]

Crowther underwent total hip replacement surgery on July 25, 2007, and had the Wright hip replacement system implanted.[18] Due to Crowther's development of metallosis[19] and other complications, he underwent total hip revision surgery on May 9, 2018.[20] During the revision surgery, the Wright System metal femoral ball head was removed along with the modular femoral neck.[21] Crowther has retained the removed components.[22]

---

[14] *Id.*

[15] *Id.*

[16] Complaint at 2.

[17] *Id.* at 2–4.

[18] *Id.* at 3, ¶ 10; Exhibit A.

[19] Metallosis is a putative medical condition that "occur[s] when metallic components in medical implants…abrade against one another," and the abrasion causes metal ions to flake off into surrounding tissue, causing inflammation and other symptoms. "Metallosis." Wikipedia, https://en.wikipedia.org/wiki/Metallosis. This condition has not been rigorously studied, and "[t]he FDA does not know at this time how often adverse local tissue reactions occur in patients with metal-on-metal hip implants." U.S. Food & Drug, *Information for Patients Who Have Metal-on-Metal Hip Implants,* https://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/ImplantsandProsthetics/MetalonMetalHipImplants/ucm241766.htm#5.

[20] Exhibit B.

[21] *Id.* at 2.

[22] Plaintiff's Memorandum in Opposition to Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint ("Opposition to Motion") at 2, docket no. 24, filed November 21, 2018.

Crowther pleaded nine causes of action against Wright Medical in his Amended Complaint, including products liability for manufacturing defect.[23] This Memorandum Decision and Order denies the Motion to Dismiss this claim.

## DISCUSSION

### A. Legal Standard for a Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[24] Rule 12(b)(6) allows a court to dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[25] To survive a motion to dismiss, a complaint must state "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[26] The facts as alleged will be accepted as true for the purposes of evaluating the sufficiency of the complaint.[27] Whether a complaint states a plausible claim for relief is a "context-specific" question that requires a court to "draw on its judicial experience and common sense"[28] and determine if the pleading's content "allows the court to draw the reasonable inference that the defendant is liable."[29] The standard does not require "detailed factual allegations," though a "formulaic recitation of the elements of a cause of action will not do."[30] "In evaluating a Rule

---

[23] Complaint at ¶¶ 25–37.

[24] Fed. R. Civ. P. 8(a).

[25] Fed. R. Civ. P. 12(b)(6).

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[27] *Id.*

[28] *Id.* at 679.

[29] *Id.* at 678.

[30] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."[31]

### B. Elements of Products Liability Claim for Manufacturing Defect

In Utah, the pleading standard for a products liability claim requires the plaintiff to meet a three-part test.[32] "The plaintiff must show '(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries.'"[33] A product is "unreasonably dangerous" if it "was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer."[34]

"Products liability always requires proof of a defective product, which can include manufacturing flaws, design defects, and inadequate warnings regarding use."[35] The Tenth Circuit Court of Appeals has determined that "a manufacturing defect claim, by its nature, involves a deviation from the product's design specifications, to the injury or potential injury of a user. The gravamen of the tort is not defective design but defective execution of the design."[36] Therefore, for Crowther's claim to survive the Motion to Dismiss, he needs to "identify what component of the

---

[31] *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[32] *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah Ct. App. 1994).

[33] *Id*. (quoting *Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 929 (Utah 1993)).

[34] Utah Code Ann. § 78B-6-702.

[35] *Bishop v. GenTec, Inc.*, 48 P.3d 218, 225 (Utah 2002) (internal quotations omitted).

[36] *Wankier v. Crown Equip. Corp.,* 353 F.3d 862, 867 (10th Cir. 2003).

5

[Wright] system was defectively manufactured, how it differed from the design and specifications, [and] how that deviation caused [his] injuries."[37]

## C. Analysis

Crowther alleges that "Defendants are required to manufacture the Wright System to certain specifications," that "[t]hese specifications cover the size of the various components such as the metal acetabular cup and the metal femoral head ball," and that the "Defendants must manufacture the acetabular cup and metal femoral head ball to operate within certain clearance levels." [38] Crowther then alleges that a "Wright System not manufactured to correct specifications could cause pain, elevated chromium and cobalt levels, metallosis and premature failure of the Wright System implant"[39] and that "the Wright System in this case contained manufacturing defects in that the Wright System (i.e., the metal acetabular shell and metal ball) differed from the manufacturer's design, specifications, and/or intentions and/or the Wright System differed from products from the same manufacturer that were intended to be identical."[40]

Wright Medical argues that Crowther has failed to meet his pleading requirement, and cites another case from this court, *Jorgensen v. Wright Medical Group*[41] in support. In *Jorgensen* the plaintiff alleged that "the Wright Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line."[42] The district court determined that plaintiff's claim was

---

[37] *Jorgensen v. Wright Medical Group, Inc.,* No. 2:18-cv-366 TS-EJF, 2018 WL 5792325 at *4–5 (D. Utah Nov. 5, 2018).

[38] Complaint at 5–6, ¶ 29.

[39] Complaint at 6, ¶ 30.

[40] Complaint at 6, ¶ 32.

[41] *Jorgensen, supra* note 40.

[42] *Jorgensen*, 2018 WL 5792325 at *2

6

conclusory and failed to plead any manufacturing flaw with specificity because the plaintiff failed to "identify what component of the system was defectively manufactured, how it differed from the design and specifications, [and] how that deviation caused her injuries."[43]

However, the *Jorgensen* opinion supports Crowther here rather than Wright Medical. Unlike the *Jorgensen* plaintiff, Crowther has identified components of the system that allegedly were defectively manufactured: the metal acetabular cup and metal ball head.[44] He has also alleged how they differed from the manufacturing specifications, namely by a variance in the clearance levels for the acetabular cup and metal ball head,[45] and has effectively alleged that the defect resulted in defective clearance levels, causing his metallosis and other injuries.[46]

Wright Medical asserts that because Crowther does not have its manufacturing specifications for the component parts, that there is no factual basis for his claim.[47] This argument is troubling, as it would mean that if a party lacks information before discovery, the information must not exist and there is no claim. Adopting a standard like this might prevent plaintiffs from successfully pleading a products liability–manufacturing defect claim, particularly since plaintiffs typically do not have access to product design and manufacturing data at the outset of litigation.

Under Utah law, a claim of manufacturing defect is a viable cause of action. The standard for pleading does not require absolute knowledge of alleged facts, but rather, "[t]he allegations

---

[43] *Id.* at *4–5.

[44] Complaint at 5–6, ¶¶ 29, 32.

[45] Complaint at 5–6, ¶ 29.

[46] Complaint at 6, ¶¶ 30–32: Plaintiff's Exhibit B describes a black residue present during the removal of the metal ball head and neck during his revision surgery. This black residue provides sufficient alleged facts to infer that the clearance level between the metal ball head and acetabular shell may have been defective, causing more contact and grinding between the component parts, causing metal ions to slough off into Plaintiff's surrounding tissue, causing his metallosis.

[47] Motion to Dismiss at 5.

must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[48] Crowther's claim that the metal acetabular cup and metal ball head implanted in him differed from the manufacturer's specifications, and specifically that the clearance levels differed from the manufacturers' specifications, is plausible and has a reasonable likelihood of being proven through available evidentiary means. The allegation is specific enough to allow Wright Medical to identify the specific claimed defect.

Crowther's allegations are therefore sufficiently specific to survive Wright Medical's Motion to Dismiss. The fact that Crowther must wait for discovery to obtain the information Wright Medical holds about the manufacturing specifications does not destroy Crowther's claim. Whether the Wright System suffered from a manufacturing defect will be revealed by the evidence produced in discovery. For these reasons, Wright Medical's 12(b)(6) Partial Motion to Dismiss is denied.

**ORDER**

IT IS HEREBY ORDERED that Wright Medical's Partial Motion to Dismiss[49] is DENIED.

Signed March 5, 2019.

BY THE COURT

David Nuffer
United States District Judge

---

[48] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247–48 (10th Cir. 2008).

[49] Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"), docket no. 23, filed November 8, 2018.